Farlow v. Frankson.

---

No. 23,365.

WILLIAM C. FARLOW and BLANCHE FARLOW, his wife, *Appellants,* v. THOMAS FRANKSON, *Appellee.*

No. 23,463.

E. R. TUCKER and L. B. TUCKER, his wife, *Appellants,* v. THOMAS FRANKSON, *Appellee.*

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Provision for Advance Payment of Rents and for Termination of Lease Interpreted.* In an oil and gas lease which contained the common provision that all rights under it should cease if a well were not begun within a certain time, unless the lessee should pay a quarterly rental of $140 in advance, a clause was added to the effect that the lessee agreed to pay $140 each three months until the royalties should exceed that amount. It is held that the additional clause did not impose

upon the lessee an absolute obligation to pay rent, but is to be interpreted as meaning that if he elected to continue the lease in force by paying rent such payments should cease whenever the royalties should exceed the amount named.

2. SAME—*Provision of Lease Relating to Its Surrender Not Complied With.* Under an oil and gas lease providing that it shall cease to be effective if no well is begun within a certain time, unless a specified periodical rent is paid in advance, and that the lessee may at any time bring the lease to an end by surrendering it and paying one dollar, where the lessee commences the payment of rent he is liable therefor until he avails himself of the surrender privilege.

3. SAME. The privilege of the lessee to end his liability under an oil and gas lease by surrendering it is not exercised by filing a release with the register of deeds, when the lessor has no notice or knowledge thereof.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed January 7, 1922. Reversed.

*John Bertenshaw,* of Independence, for the appellants.
*J. B. Tomlinson,* of Independence, for the appellee.

The opinion of the court was delivered by

MASON, J.: William C. Farlow and his wife on May 15, 1920, sued Thomas Frankson for rent claimed to be due upon an oil and gas lease executed by them to him on September 15, 1917. A demurrer to the petition was sustained, and the plaintiffs appeal.

The lease by its terms was to continue in force for five years and as much longer as oil and gas should be found in paying quantities. The paragraphs upon the effect of which the case turns read as follows:

"Provided, a well is not commenced on said premises within three (3) months from the date hereof, unavoidable accidents and delays excepted, then this grant shall become null and void, unless second party shall pay to the first party a quarterly rental of One Hundred Forty ($140.00) Dollars, payable quarterly in advance, for each three (3) months. . . .

"All pipe lines are to be buried below plow depth on plow ground. Second party agrees to pay One Hundred Forty ($140.00) Dollars each three (3) months until royalties exceed this amount.

"It is further mutually agreed by and between said party of the first part and said party of the second part that said party of the second part shall have the right to surrender this lease to said party of the first part at any time upon payment of One ($1.00) Dollar and that thereupon this lease shall cease and determine and become absolutely null and void. and no longer binding upon either party."

No well was ever begun, but quarterly rentals were paid for a period ending June 15, 1918, the payment for the last quarter being made March 27, 1918. On February 26, 1919, the defendant, with-

out notice to the plaintiffs and without their knowledge, filed with the register of deeds an instrument undertaking to discharge the lease. There was no allegation of any unavoidable accident or delay in beginning a well, so that the clause in that regard is not now important.

1. The plaintiffs contend that the words "second party agrees to pay one hundred forty. ($140.00) dollars each three (3) months until royalties exceed this amount," which are said to have been written into the lease, prevail over the prior clause requiring the lessee to pay rent only in case he elects to keep the lease in force by so doing, and impose an absolute obligation upon him to make quarterly payments until he sees fit to end the lease in the way pointed out in the last paragraph quoted. We think, however, the additional provision is not intended as a new and independent requirement for the payment of rent. It does not supersede but merely supplements that already made, the meaning being that the rent of $140 a quarter already provided for shall cease whenever the royalties exceed that amount.

2. Under a quite similar lease, where no well was begun and the lessee paid nothing, it was held that no recovery of rent could be had because the contract did not bind the lessee to do anything—it merely gave him an option, and when he elected not to drill and not to pay rent the lease automatically came to an end without any formal surrender. (*O'Neill v. Risinger,* 77 Kan. 63, 93 Pac. 345.) The same rule would doubtless apply here if the defendant had made no payment whatever. But we hold that in making the payments he did he elected to avail himself of the rental feature of the contract and that thereafter he was under obligation to continue them until he chose to escape further liability by a surrender in accordance with the provision in reference thereto. It is true that even after several payments had been made his failure to meet another at maturity would be a ground of forfeiture of which the lessors could avail themselves, as was done in *Waters v. Hatfield,* 107 Kan. 136, 190 Pac. 599, where, however, the promise to pay rent was absolute and not optional. But it will be noted that the rental for the quarter ending June 15, 1918, was paid twelve days after it was due and it is not open to serious doubt that such payment and its acceptance kept the lease in force.

3. The filing of the release in the office of the register of deeds,

not being known to the plaintiffs, did not amount to a surrender under the provision of the lease relating thereto.

An action of the same character brought against the defendant by E. R. Tucker and wife, in which like proceedings were had, has been submitted with that already discussed and is governed by the same considerations.

In each case the judgment is reversed and the cause remanded with directions to overrule the demurrer to the petition.