## GLOYD v. MIDWEST REFINING CO.
### No. 649.

Circuit Court of Appeals, Tenth Circuit.
Jan. 3, 1933.

J. D. Atwood, of Roswell, N. M. (B. Frank Haag, of Midland, Tex., and H. C. Buchly, of Roswell, N. M., on the brief), for appellant.

A. K. Barnes, of Denver, Colo. (A. C. Campbell, of Cheyenne, Wyo., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

On June 4, 1926, Henry D. McKinley and Sadie McKinley, his wife being the owners of 480 acres of land in Lea County, New Mexico, executed and delivered to Eugene S. Adkins an oil and gas lease thereof. Such lease is for "a term of ten years * * * and so long thereafter, as oil or gas, or either of them, is produced from said land by the lessee," recites a consideration or bonus of $360 paid by the lessee, and contains the following provision:

"If no well be commenced on said land on or before the 4th day of June, 1927, this lease shall terminate as to both parties unless the lessee on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the First State Bank at Seminole, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of One Hundred Twenty & No/100 Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments of tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

On October 20, 1927, Gloyd acquired, through proper conveyances, an undivided one-fourth interest in the oil, gas, and other minerals in and under the N. W. ¼ of Sec. 5, Twp. 19 S., Range 38 E., N. M. P. M., containing 160 acres, and being a portion of the lands embraced in such lease.

Prior to the last mentioned date, the Midwest Company, through proper conveyance, had acquired all the right, title, and interest of the lessee under said lease in and to such 160 acres of land.

On December 8, 1927, Gloyd wrote a letter to the Midwest Company notifying it that he had acquired an undivided one-fourth interest in the oil, gas, and other minerals in such 160 acres of land and said, "kindly enter on your records that I have acquired this interest and make all payments of my interest in the rentals, royalties, etc., according to the terms of said lease to me at Oklahoma City, Oklahoma, instead of the depository bank stipulated in the lease." The Midwest Company by its letter dated December 12, 1927, acknowledged Gloyd's letter and stated, "our records have been changed accordingly."

On May 28, 1928, no well having been commenced on the land covered by such lease, the Midwest Company elected to pay the sum of $40 on or before June 4, 1928, to operate as rental on such 160 acres of land and to secure the privilege of deferring the commencement of a well for a period of twelve months from the latter date. It thereupon made its check, payable to the order of Gloyd for his

share of such rental, inclosed such check with a letter of transmittal in an envelope addressed to Gloyd at his post office address, 406 Continental Building, Oklahoma City, Oklahoma, and deposited it in the United States post office at Denver, Colorado, with postage duly prepaid thereon, for transmittal by ordinary mail. The balance of the rental was duly paid to the owners of the undivided three-fourths interest in such land.

The Gloyd check was mailed in ample time for it to have reached him, in the usual course of mail, prior to June 4, 1928. However, it was lost in the mail and never delivered to Gloyd. Thereafter, Gloyd notified the Midwest Company that he had not received such check. Whereupon, the Midwest Company promptly transmitted to him by ordinary mail a duplicate check covering such rental. Gloyd returned the duplicate check to the Midwest Company and refused to accept it on the sole ground that the payment had been made too late. The Midwest Company returned the duplicate check to Gloyd, requested him to accept it, and insisted that the lease had not terminated.

Thereafter, Gloyd brought this suit to cancel such lease as to his undivided one-fourth interest in such 160 acres of land. From a decree in favor of the Midwest Company, Gloyd has appealed.

Oil and gas leases are now, in the nomenclature of the oil fields and in legal literature, classified as "or" leases and "unless" leases. The lease in the instant case is an "unless" lease. The usual rental provision of the "or" lease is substantially as follows:

"The party of the second part agrees to commence a well on said premises within twelve months from the date hereof or thereafter pay the first parties a yearly rental of one hundred twenty dollars, payable quarterly in advance until said well is commenced, and it is agreed that the commencing and completing of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease."

Under an "or" lease the lessee is obligated either to drill a well or pay rental, and the failure to pay rental does not terminate the lease; and where the lessee makes default in the payment of rental the lessor may waive the default and recover such rental. Healdton O. & G. Co. v. Smith, 80 Okl. 242, 195 P. 756; McKee v. Grimm, 57 Okl. 680, 157 P. 308; McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 243 P. 582.

But under an "unless" lease the lessee is not obligated either to commence a well or pay rental. Until a well has been drilled and oil or gas produced, such a lease is terminable at the will of the lessee, and where no well has been commenced such a lease automatically terminates upon the intentional failure of the lessee to pay the stipulated rental within the time provided in the lease. McDaniel v. Hager-Stevenson Oil Co., supra; Eastern Oil Co. v. Smith, 80 Okl. 207, 195 P. 773; Garfield Oil Co. v. Champlin, 78 Okl. 91, 189 P. 514; Ireland v. Chatman, 87 Okl. 223, 209 P. 408; Hopkins v. Zeigler (C. C. A. 6) 259 F. 43; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 P. 260, 43 L. R. A. (N. S.) 487; Deming Inv. Co. v. Lanham, 36 Okl. 773, 130 P. 260, 44 L. R. A. (N. S.) 50; Snodgrass v. South Penn Oil Co., 47 W. Va. 509, 35 S. E. 820; Glasgow v. Chartiers Gas Co., 152 Pa. 48, 25 A. 232.

The lessee in an "or" lease, however, may terminate the lease at any time by availing himself of the right to do so contained in the surrender clause, after paying all the rentals due at the time of the surrender. Northwestern Oil & Gas Co. v. Branine, 71 Okl. 107, 175 P. 533, 3 A. L. R. 344; Kolachny v. Galbreath, 26 Okl. 772, 110 P. 902, 38 L. R. A. (N. S.) 451.

The weight of authority is to the effect that an "unless" lease, until the lessee has gone into possession, drilled a well, and commenced the production of oil or gas from the leased premises, conveys no vested interest in the land itself and is only an option to go upon the land and explore for oil and gas. Brunson v. Carter Oil Co. (D. C. Okl.) 259 F. 656; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okl. 719, 119 P. 260, 43 L. R. A. (N. S.) 487; Deming Inv. Co. v. Lanham, 36 Okl. 773, 130 P. 260, 44 L. R. A. (N. S.) 50; Kolachny v. Galbreath, 26 Okl. 772, 110 P. 902, 38 L. R. A. (N. S.) 451; Cortelyou v. Barnsdall, 236 Ill. 138, 86 N. E. 200; McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 243 P. 582; Solberg v. Sunburst O. & G. Co., 76 Mont. 254, 246 P. 168; Morton v. Drosten (Mo. App.) 185 S. W. 733; Mitchell v. Probst, 52 Okl. 10, 152 P. 597; Glasgow v. Chartiers Gas Co., 152 Pa. 48, 25 A. 232. But when the lessee has gone upon the premises, completed a well, and produced oil or gas therefrom, he then acquires a vested interest for the term of the lease and becomes bound by all the covenants of the lease, express and implied. Venture Oil Co. v. Fretts, 152 Pa. 451, 25 A. 732; Glasgow v. Chartiers Oil Co., 152 Pa. 48, 25 A. 232; Parks

v. Sinai O. & G. Co., 83 Okl. 295, 201 P. 517; Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. 978, 980, 44 L. R. A. 107; McGraw Oil & Gas Co. v. Kennedy, 65 W. Va. 595, 64 S. E. 1027, 28 L. R. A. (N. S.) .959; Huggins v. Daley (C. C. A. 4) 99 F. 606, 48 L. R. A. 320; Rawlings v. Armel, 70 Kan. 778, 79 P. 683.

The Supreme Court of New Mexico, in Terry v. Humphreys, 27 N. M. 564, 203 P. 539, 543, said, with respect to an "unless" lease:

"We are of the opinion that the instrument before us for construction in this case which by its terms provides that the lease shall extend for a period of five years, and as long thereafter as oil and gas, or either of them, is produced by the lessee, conveys an indefinite, indeterminable term, and is therefore more than a mere lease for years. It conveys by its terms more than a chattel interest or a mere license or incorporeal hereditament, and the interest attempted to be conveyed is included within the phrase 'real property of the community;'"

and held that it was essential to the validity of such a lease of community real estate for the wife to join in the execution thereof, under the statutes of New Mexico which authorize the husband to transfer personalty of the community without the wife joining in the transfer but provide that a valid conveyance of real estate of the community cannot be made without the wife joining in such conveyance. Section 68-403, N. M. Comp. St. 1929. Whether the court considered the immediate effect of such lease upon the execution thereof, or the effect after the lessee had gone into possession and produced oil and gas, does not clearly appear from the opinion.

Perhaps the most accurate description of the right acquired by a lessee under an "unless" oil and gas lease is a profit à prendre. Brinkman v. Empire Gas & Fuel Co., 120 Kan. 602, 245 P. 107; Phillips v. Springfield Crude Oil Co., 76 Kan. 783, 92 P. 1119; Campbell v. Smith, 180 Ind. 159, 101 N. E. 89; Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 3 A. L. R. 352; McIntosh v. Leslie, 13 Ont. Law Rep. 54.

Counsel for Gloyd contend that, since the lease here involved is an "unless" lease, it automatically terminated on the failure of the Midwest Company to pay the rental on the due date; that it conveyed no estate in the land but was a mere option; that the failure to pay was the breach of a condition precedent to the acquisition of a right, and not a breach of a condition subsequent resulting in the forfeiture of an existing right; that the rights of the Midwest Company were not forfeited, but terminated under the provisions of the lease, and that in such cases equity will not grant relief. This contention finds support in the following cases: Gillespie v. Bobo (C. C. A. 5) 271 F. 641; Empire Gas & Fuel Co. v. Saunders (C. C. A. 5) 22 F.(2d) 733; Keeler v. Dunbar (C. C. A. 5) 37 F. (2d) 868; Young v. Jones (Tex. Civ. App.) 222 S. W. 691; Appling v. Morrison (Tex. Civ. App.) 227 S. W. 708; Bailey v. Williams (Tex. Civ. App.) 223 S. W. 311.

When the lessee in an "unless" lease in good faith manifests his intention to continue the lease by undertaking to pay such rental through a method and means customarily used in such transactions, in ample time for the payment to reach the lessor or the agreed depository on or before the due date, but due to accident or mistake such payment fails to reach the lessor in time, the lease is not, because of such failure, automatically terminated. This is true because the acts of the lessee manifest an intention not to terminate the lease. Oldfield v. Gypsy Oil & Gas Co., 123 Okl. 293, 253 P. 298; Brazell v. Soucek, 130 Okl. 204, 266 P. 442. In such a case in the event the lessor insists on a termination of the lease because of such unintentional failure, it results in the forfeiture of a right, whether the lease conveys an interest in the land or grants an option. If the lease conveys an interest in the land, the right to continue and extend such interest by payment of rental is forfeited. If the lease creates an option to explore, which the lessee may continue and extend by payment of the rental, that option-right is forfeited. This, therefore, is essentially a suit to establish a forfeiture as a matter of record, and to obtain the cancellation of the thing forfeited. Equity will only give its aid to the enforcement of a forfeiture where to do so is more cognizant with the principles of right, justice, and morality than to withhold it. Brewster v. Lanyon Zinc Co. (C. C. A. 8) 140 F. 801; Liddle v. Cook (C. C. A. 8) 209 F. 182; Lindeke v. Associates Realty Co. (C. C. A. 8) 146 F. 630. Under the facts in the instant case, it is more cognizable with the principles of equity to withhold than to grant such relief.

Is the Midwest Company entitled to equitable relief from such forfeiture? It must be conceded that the authorities generally hold that equity will not grant relief to an optionee, who has lost his option by

failure to make a payment within the time stipulated in the option, on the ground of forfeiture alone. Steele v. Bond, 32 Minn. 14, 18 N. W. 830; Usher v. Livermore, 2 Iowa, 117; Granville Lumber Co. v. Atkinson (D. C. N. C.) 234 F. 424; Woods v. McGraw (C. C. A. 4) 127 F. 914; Bluthenthal v. Atkinson, 93 Ark. 252, 124 S. W. 510; Briles v. Paulson, 170 Cal. 196, 149 P. 169; Pomeroy's Equity Jurisprudence, Vol. 5, § 2228.

But the rule is different where the option is given for a valuable consideration and other grounds of equitable jurisdiction exist, such as accident or mistake. Page v. Hughes, 2 B. Mon. (41 Ky.) 439; Bateman v. Murray, 1 Ridg. 170; Monihon v. Wakelin, 6 Ariz. 225, 56 P. 735; House v. Jackson, 24 Or. 89, 32 P. 1027; James on Option Contracts, Sec. 862. See, also, Steele v. Bond, supra; Usher v. Livermore, supra, and Briles v. Paulson, supra.

And the fact that the forfeiture results from the breach of a condition precedent is not always an insuperable obstacle to equitable relief. Notes, 69 L. R. A. 836, 86 Am. St. Rep. 53.

Furthermore, an "unless" lease is more than a mere option to acquire a right. If based on a consideration, it gives the lessee a present right or license to enter upon the leased premises and explore for and develop oil or gas therein, and the right, on the performance of certain conditions, to extend that license to enter and explore. True, the lessee is not obligated to enter upon and explore and in that sense it is an option, but still it is a present existing right which he may exercise with respect to the leased premises, and not a mere option to acquire such a right. Brunson v. Carter Oil Co., supra. Accordingly, equity will grant relief in cases where failure to make the payment resulting in the forfeiture of an "unless" lease was due to accident or mistake, and the granting of such relief will not place the lessor in a less advantageous position than he would have been in had the payment been timely made. Brunson v. Carter Oil Co., supra; Kays v. Little, 103 Kan. 461, 175 P. 149, 1 A. L. R. 675; Parris v. Butler County O. Co., 108 Kan. 330, 195 P. 879; Harvey v. Benmo Oil Co. (D. C. Okl.) 272 F. 475; Brazell v. Soucek, 130 Okl. 204, 266 P. 442; Oldfield v. Gypsy Oil & Gas Co., 123 Okl. 293, 253 P. 298. Hopkins v. Zeigler (C. C. A. 6) 259 F. 43, is not to the contrary. There, the court held the facts were such that equitable relief should be denied.

In the instant case the lease was given for a valuable and substantial consideration. The Midwest Company manifested its intention to continue the lease by undertaking to pay the rental through a method and means customarily used in such transactions, in ample time for the payment to reach Gloyd before the due date. The failure of such payment to reach Gloyd was due to an accident resulting from causes over which the Midwest Company had no control. It acted promptly on being advised of the default. Accident is one of the oldest heads of equity jurisprudence, and we are of the opinion that the Midwest Company was entitled to be relieved from the default and to have the lease reinstated on the equitable ground of accident. Pomeroy's Equity Jurisprudence, vol. 2 (4th Ed.) § 824.

We think the decree was right for another reason. Gloyd requested the Midwest Company to waive its right to make the payment at the depository designated in the lease, and to make such payments directly to him. The Midwest Company agreed to this modification of the contract. Gloyd was a resident of Oklahoma City and knew that the Midwest Company's principal office was located in Denver. He must have contemplated and intended that such payments should be forwarded to him by mail. If he impliedly authorized the Midwest Company to make such payment through the mail, the depositing of the check in the post office at Denver in an envelope properly addressed with postage duly prepaid on or before the due date constituted payment.

The decree is affirmed.